UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'  JS-6

| Case No. | 2:16-cv-05996-CAS (RAOx) | Date | February 13, 2017 |
|---|---|---|---|
| Title | YESENIA JURADO V. SCHUTZ 655 LLC; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| CATHERINE JEANG | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:** DEFENDANTS' MOTION TO COMPEL ARBITRATION (Filed December 14, 2016, Dkt. 13)

## I.   INTRODUCTION

On July 12, 2016, plaintiff Yesenia Jurado filed a complaint in the Superior Court for the County of Los Angeles against Schutz 655, LLC; Schutz Cali, LLC (collectively "Schutz"); Fernando Porto; Charlotte Bush; and Does one through twenty. Dkt. 1 Ex. 1 ("Complaint"). The Complaint alleges five claims, namely, (1) racial harassment by all defendants in violation of the Fair Employment and Housing Act, Cal. Gov. Code §§ 12900 et seq.; (2) failure to prevent harassment and retaliation by Schutz and Does one through twenty; (3) wrongful termination by Schutz and Does one through twenty; (4) intentional infliction of emotional distress by all defendants; and (5) willful failure to pay by Schutz and Does one through twenty, in violation of California Labor Code sections 201 and 204. The gravamen of plaintiff's complaint is that she was fired from a managerial position at defendants' retail store allegedly because she refused to comply with discriminatory hiring policies and because she refused to fire an African-American sales associate based on her race.

On August 9, 2016, Schutz and Bush each filed answers to the complaint. See Dkt. 1 Exs. 6-8. Porto was served with the Complaint on July 13, 2016, dkt. 1 Ex. 5, but, to date, has not filed a response. On August 11, 2016, defendants filed a notice of removal to federal court. Dkt. 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:16-cv-05996-CAS (RAOx) | Date | February 13, 2017 |
| Title | YESENIA JURADO V. SCHUTZ 655 LLC; ET AL. | | |

On December 14, 2016, Schutz and Bush filed a motion to compel arbitration. Dkt. 13. On January 23, 2017, plaintiff filed an opposition. Dkt. 14. On January 30, 2017, Schutz and Bush filed a reply.[1]

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

### A. Plaintiff's Claims

Schutz is a retail company that sells shoes. Schutz operates a store on Madison Avenue in New York City and a newer store in Beverly Hills, California. The parties appear to agree that in February 2016, Schutz hired plaintiff to be the store manager for its new store in Beverly Hills. Plaintiff's claims arise out of her employment by Schutz and her eventual termination.

Plaintiff alleges that, during her initial training for the position, Porto and Bush informed plaintiff that Schutz "would be only hiring pretty blonde, blue-eyed female sales staff." Compl. ¶ 16. Porto allegedly requested to see photographs of applicants as well as their resumes. Id. In late February 2016, plaintiff alleges that she sent a photo of an African-American candidate to Porto and was told not to hire the candidate because "she didn't meet the [Schutz] brand." Id. ¶ 17. Plaintiff continued to screen sales associate applicants and, on or about March 4, 2016, interviewed a different African-American woman named Tera Williams. Id. ¶ 18. Plaintiff alleges that Williams' skills and credentials were impressive and that plaintiff decided to hire Williams. The next day, March 5, 2016, Porto saw Williams working at the store and indicated to plaintiff

---

[1] Plaintiff appears to have attempted to serve Porto by substituted service at Schutz corporate headquarters in California. Dkt. 1 Ex. 5. During oral argument on the instant motion, Schutz' counsel indicated that at the time of the substituted service, Porto was no longer employed by Schutz. Plaintiff's counsel indicated that plaintiff continues to attempt to serve Porto. Porto has not joined in the instant motion. Accordingly, for purposes of this order, the Court refers to the Schutz companies and Bush collectively as "defendants."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'   JS-6** |
|---|---|---|---|
| Case No. | 2:16-cv-05996-CAS (RAOx) | Date | February 13, 2017 |
| Title | YESENIA JURADO V. SCHUTZ 655 LLC; ET AL. | | |

that he was unhappy with the new-hire.  Id. ¶ 19.  Porto allegedly stated, "this is not what we talked about."  Id.

On March 8, 2016, Bush allegedly called plaintiff and told her to fire Williams.  Id. ¶ 20.  Plaintiff alleges that she refused to fire Williams because Williams had no performance issues and because Williams could not be fired as a result of her race.  Id.  On March 15, 2016, Schutz terminated plaintiff's employment.  Id. ¶ 22.  Bush informed plaintiff of her termination "telling her that [Bush] knew it was not fair, but Porto had made the decision."  Id.  According to plaintiff, "the reason given was that Porto had concluded that [plaintiff] was not a fit with the Schutz culture and way."  Id.

### B. The Terms and Conditions Agreement

The instant motion is based on a purported arbitration agreement between plaintiff and all of the defendants.  In 2012, to assist with its human resources and payroll management, Schutz hired a professional employer organization called TriNet.  Dkt. 13-4 ("Bush Decl.") ¶ 7.  One service performed by TriNet for Schutz is administration of a Terms and Conditions Agreement ("TCA").  Id.  Defendants offer evidence suggesting that, while creating a Schutz employee profile on TriNet's website, Jurado agreed to a TCA that included an arbitration clause.[2]  See generally Dkt. 13-3 ("Folsom Decl.").

TriNet maintains a password protected website wherein TriNet's customers' (e.g. Schutz's) employees can access certain employment policies, employee records, and forms.  Folsom Decl. ¶ 3.  TriNet's customers' newly hired employees, like Jurado,

---

[2] In support of their motion, defendants have submitted a declaration by Grant Folsom, TriNet's Vice President for Technology Operations.  See Dkt. 13-3.  Plaintiff has submitted fifteen objections to various portions of the Folsom declaration.  For simplicity, the Court summarizes the evidence here without reference to plaintiff's objections.  The gravamen of plaintiff's objections is that Folsom lacks sufficient personal knowledge to make certain statements about the security protocols of the TriNet login system as well as the TCA in place when Jurado was hired.  In general, plaintiff's objections are without merit and the Court declines to address each individually; however, to the extent that the Court's opinion relies upon portions of the Folsom declaration and plaintiff raises a viable evidentiary concern, the Court will address plaintiff's objections in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:16-cv-05996-CAS (RAOx) | Date | February 13, 2017 |
| Title | YESENIA JURADO V. SCHUTZ 655 LLC; ET AL. | | |

access the online portal as part of TriNet's initial intake process.  Id. ¶ 6.  The first time that a new employee logs into the TriNet website, the very first thing that appears after the login is an electronic version of a TCA.  Id. ¶ 9.  The new employee is asked to "acknowledge that he/she has 'read and underst[ood] the contents' of the TCA . . . and 'agree[s] to abide by the terms and conditions" contained therein.  Id. ¶ 9.

According to Folsom, Jurado's TriNet profile indicates that the TCA was presented to Jurado for review and acceptance on or about February 17, 2016.  Id. ¶ 11.  Jurado's TriNet profile indicates that, on or about February 17, 2016, after being presented with the TCA, Jurado checked a box next to the words "I Accept."[3]  Id. ¶¶ 13-15; Ex. B. Attached to Folsom's declaration is a copy of the TCA shown to Jurado.  See Id. Ex. A ("TCA").  As discussed in more detail below, the TCA contains an arbitration provision. TCA ¶ 9.  The TCA's arbitration provision states:

> The Federal Arbitration Act applies to this [Dispute Resolution Protocol ('DRP')] . . . This DRP will survive termination of the employment relationship.
>
> **With only the exceptions described below, arbitration will replace going before a government agency or a court for a judge or jury trial, and even in the exceptional situations described below, NO JURY TRIAL WILL BE PERMITTED, unless applicable law does not allow the enforcement of a pre-dispute jury trial waiver in the particular circumstances presented.**

Id. ¶ 9(a) (emphasis in original).

### III.   LEGAL STANDARDS

"An agreement to arbitrate is a matter of contract: 'it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.'" Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir.2000) (quoting

---

[3] Next to the "I Accept" button is another button labeled "Reject."  Id. ¶ 13. Neither party describes what would occur if a party attempted to proceed after selecting "Reject."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:16-cv-05996-CAS (RAOx) | Date | February 13, 2017 |
| Title | YESENIA JURADO V. SCHUTZ 655 LLC; ET AL. | | |

First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995)). As with any other contract dispute, the Court must first look to the express terms of the contract. Id.

The Federal Arbitration Act ("FAA") provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It is a matter to be determined by the court whether the FAA applies to a certain agreement; "[a]s a threshold matter, the FAA applies if, among other things, the contract requires dispute resolution 'by arbitration.'" Judge William W. Schwarzer, California Practice Guide: Federal Civil Procedure Before Trial, § 16:63.1 (The Rutter Group 2002) (citing Portland Gen. Elec. Co. v. United States Bank Trust Nat'l Ass'n as Tr. for Trust No. 1, 218 F.3d 1085, 1089 (9th Cir.2000)).

Any party to an arbitration agreement covered by the FAA who is "aggrieved by the alleged . . . refusal of another to arbitrate" may petition a federal district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Under the FAA, the court, not the arbitrator, must decide whether a particular dispute is arbitrable. 9 U.S.C. § 4; AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986) (holding that the arbitrator is without power to determine arbitrability absent "clear[ ] and unmistakabl[e]" language in the arbitration agreement conferring such power). The court must determine (1) whether there exists a valid agreement to arbitrate; and (2) if there is a valid agreement, whether the dispute falls within its terms. Chiron Corp., 207 F.3d at 1130. "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." Id. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985); Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 720 (9th Cir.1999) (noting that where an arbitration agreement has been signed by the parties with respect to the issues in dispute, "[s]uch agreements are to be rigorously enforced").

The FAA further provides:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | 'O' JS-6 |
|---|---|---|
| Case No. | 2:16-cv-05996-CAS (RAOx) | Date February 13, 2017 |
| Title | YESENIA JURADO V. SCHUTZ 655 LLC; ET AL. | |

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. In addition, "[a] trial court has authority to stay proceedings in the interest of saving time and effort for itself and litigants." ATSA of California, Inc. v. Cont'l Ins. Co., 702 F.2d 172, 176 (9th Cir.1983).

## IV. DISCUSSION

### A. Waiver of the Right to Compel Arbitration

As an initial matter, plaintiff argues that defendants have waived any potential right to compel arbitration by participating in this action and failing to bring a motion to compel arbitration sooner.

Waiver of a contractual arbitration right is disfavored and must be evaluated "in light of the strong federal policy favoring enforcement of arbitration agreements." Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986). "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." Id.

This action was filed on July 12, 2016, defendants filed answers on August 9, 2016, and removed the action to federal court on August 11, 2016. In their respective answers, defendants have each pleaded an affirmative defense based upon plaintiff's alleged agreement to binding contractual arbitration. Dkt. 1 Ex. 6 (Aff. Defense 34); Ex. 7 (Aff. Defense 34); and Ex. 8 (Aff. Defense 32). Plaintiff argues that "[t]he Answer and Federal Removal are acts that are completely inconsistent with Defendants' known right to compel arbitration." Opp'n at 7. The Court disagrees. The parties agree that defendants first asserted their purported right to compel arbitration on September 20,

Case 2:16-cv-05996-CAS-RAO   Document 16   Filed 02/13/17   Page 7 of 14   Page ID #:350

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'   JS-6** |
|---|---|---|---|
| Case No. | 2:16-cv-05996-CAS (RAOx) | Date | February 13, 2017 |
| Title | YESENIA JURADO V. SCHUTZ 655 LLC; ET AL. | | |

2016, in a letter sent to plaintiff.  See Dkt. 13-2 ¶ 3.  On November 2, 2016, plaintiff's counsel informed defendants that plaintiff would not stipulate to arbitration.  Id. ¶ 6; Ex. 5.  The instant motion followed.  Under the circumstances defendants do not appear to have taken actions inconsistent with their arbitration right nor has plaintiff suffered prejudice as a result of any such actions.  This action is in the early stages, defendants have not "substantially invok[e] the litigation machinery," E.C. Ernst, Inc. v. Manhattan Construc. Co., 559 F.2d 268, 269 (5th Cir.1977), and the instant motion is the first motion either party has filed.  Numerous "[c]ourts have found that the filing of a complaint, an answer, a counterclaim or a third-party complaint does not waive the right to pursue arbitration."  Creative Telecommunications, Inc. v. Breeden, 120 F. Supp. 2d 1225, 1232 (D. Haw. 1999) (collecting cases).  Accordingly, defendants have not waived their right to compel arbitration.

### B. The TCA Arbitration Clause Is a Valid Agreement to Arbitrate

Plaintiff next argues that the arbitration clause of the TCA is not a valid agreement to arbitrate because defendants have not presented admissible evidence demonstrating Jurado's assent to the terms of the arbitration clause and because, according to plaintiff, the arbitration clause is unconscionable and unenforceable.

#### 1. Plaintiff Assented to the TCA

Regarding the existence of an arbitration agreement, defendants have offered several declarations and exhibits demonstrating that Jurado assented to the terms of the TCA in February 2016, soon after she was first hired.  Plaintiff has submitted objections to many of the pertinent statements in defendants' declarations and argues, "[s]hould the Court agree with the stated objections, this Motion will be unsupported by evidence and must be denied."  Opp'n at 2.

> 'When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard of Fed.R.Civ.P. 56.'  In considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate was made, a district court should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:16-cv-05996-CAS (RAOx) | Date | February 13, 2017 |
|---|---|---|---|
| Title | YESENIA JURADO V. SCHUTZ 655 LLC; ET AL. | | |

Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (Illston, J.) (quoting McCarthy v. Providential Corp., 1994 WL 387852 at *2, 1994 U.S. Dist. LEXIS 10122 at *6 (N.D.Cal.1994)).

Defendants' motion relies, in large part, upon the declaration by Folsom, TriNet's Vice President for Technology Operations. In his declaration, Folsom states:

> [i]n my position, I am familiar with the online tools that TriNet makes available to its client's worksite employees. Specifically, I am currently involved in the maintenance of the online portal and the online process by which individuals are provided with TriNet's Terms and Conditions Agreement ('TCA') and the Dispute Resolution Protocol ('DRP'), are allowed to review and acknowledge the TCA and DRP, and the process by which individuals agree to abide by both.

Folsom Decl. ¶ 4. He further explains, "I have access to the online portal and information contained in it, and can request the user audit log for each individual who creates their own personal password protected account." Id. Regarding Jurado's online account, Folsom explains:

> I have reviewed the online portal system, including the individual online portal accounted created by [Jurado]. Based upon my review of the information contained therein, I was able to confirm that the DRP used by TriNet was electronically presented to Ms. Jurado via her individual online portal account. A true and correct copy of the TCA in effect at that time, which contains the DRP, is attached hereto as **Exhibit 'A.'** This is the same DRP that was presented to Ms. Jurado for review and acceptance on or about February 17, 2016.

Id. ¶ 11 (emphasis in original).[4] Folsom explains that after Jurado was presented with the TCA enshrined in Exhibit A, she checked a box labeled "I Accept" rather than an

---

[4] Plaintiff argues that the language in paragraph eleven of the Folsom declaration is inadmissible hearsay. Plaintiff's argument appears to be that, whatever Folsom observed in Jurado's online profile is an out of court statement being offered for its truth.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:16-cv-05996-CAS (RAOx) | Date | February 13, 2017 |
| Title | YESENIA JURADO V. SCHUTZ 655 LLC; ET AL. | | |

adjacent box labeled "Reject." Id. ¶¶ 13-16. Folsom claims that he "personally verified that Ms. Jurado electronically acknowledged and accepted the DRP on February 17, 2016," by observing a record automatically placed in her account profile and noting that it had a "Y" in the pertinent "accepted" column.[5] Id. ¶ 16; Ex. B.

The foregoing is undisputed, admissible evidence that Jurado accepted the terms of the TCA, and the arbitration clause therein. Applying the summary judgment standard, Concat, 350 F. Supp. 2d at 804, defendants have adequately demonstrated facts supporting their motion to compel arbitration. The burden then shifts to plaintiff to point to evidence creating a material issue of disputed fact.

Plaintiff does not contend that she never checked an "I accept" box while being shown the TCA. Instead, Jurado claims that she created her TriNet online account on a computer at the Schutz office in New York, id. ¶ 5, and that she does not "recall reviewing or accepting any type of arbitration agreement with Schutz," id. ¶ 6. Jurado's declaration is insufficient to create a disputed issue of material fact. Jurado does not aver that she never had access to the TCA or that she did not assent to its terms. Accordingly, the Court concludes that Jurado assented to the TCA.

However, defendants have offered proper foundation for the admissibility of Jurado's online profile records. Folsom's declaration describes the records he observed in Jurado's online profile, see Folsom Decl. ¶¶ 14-15, and offers a "true and correct copy of a screenshot of" the records themselves, id. ¶ 15; Ex. B. Folsom's declaration further states that Jurado's online profile records were automatically "generated at the time Ms. Jurado accepted the DRP on February 17, 2016," id. ¶ 19, and are kept "in the ordinary course of [TriNet's] regularly conducted business activity," id. ¶ 20. Plaintiff has not shown "that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." See Fed. R. Evid. 803(6). Accordingly, Jurado's online profile records fall within an exception to the hearsay rules and are admissible. Id. (permitting records of a regularly conducted activity). Folsom's statements based upon Jurado's online profile records are therefore also admissible.

---

[5] Plaintiff objects that Exhibit B, a screenshot of Jurado's online profile records, is inadmissible hearsay. As discussed, supra note four, Exhibit B to the Folsom declaration is admissible as a record of a regularly conducted activity. See Fed. R. Evid. 803(6).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:16-cv-05996-CAS (RAOx) | Date | February 13, 2017 |
| Title | YESENIA JURADO V. SCHUTZ 655 LLC; ET AL. | | |

### 2. The Arbitration Clause of the TCA Is Enforceable

Plaintiff next argues that the arbitration clause of the TCA is unenforceable because it is unconscionable.

Courts apply state contract law to determine the enforceability of an arbitration agreement. Pokorny v. Quixtar, 601 F.3d 987, 994 (9th Cir. 2010). Under California contract law, unconscionability is one of several grounds upon which a contract may be found unenforceable. Cal. Civ. Code § 1670.5(a). Unconscionability has two components—procedural and substantive. Armendariz v. Found. Health Psychcare Servs., Inc., 6 P.3d 669 (2000); Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir.2003). A contract is procedurally unconscionable if at the time the contract was formed there was "oppression" or "surprise." Discover Bank v. Superior Court of L.A., 113 P.3d 1100 (2005). "Substantive unconscionability addresses the fairness of the term in dispute." Pokorny, 601 F.3d at 997 (quoting Szetela v. Discover Bank, 97 Cal. App. 4th 1094, 1100 (2002)) (internal quotation marks omitted). Under California law, substantive unconscionability "arises when a provision is overly harsh, unduly oppressive, so one-sided as to shock the conscience, or unfairly one-sided." Mohamed v. Uber Techs., Inc., 109 F. Supp. 3d 1185, 1206-07 (N.D. Cal. 2015) (Chen, J.) (citations omitted). To be unenforceable, a contract must be both procedurally and substantively unconscionable. Armendariz, 6 P.3d 669. However, courts use a sliding scale, "such that the greater the degree of unfair surprise or unequal bargaining power, the less the degree of substantive unconscionability required to annual the contract and vice versa." Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc., 107 Cal.Rptr.2d 645 (Ct. App. 2001). The party challenging an arbitration agreement has the burden of proving unconscionability. Crippen v. Cent. Valley RV Outlet, Inc., 124 Cal.App.4th 1159, 1165, 22 Cal.Rptr.3d 189 (2004).

In this case, the Court need not evaluate whether the TCA was a procedurally unconscionable contract of adhesion because plaintiff has not demonstrated that the arbitration clause is substantively unconscionable. Even if the degree of procedural unconscionability were very high, there would be no basis for concluding that the TCA is "overly harsh, unduly oppressive, so one-sided as to shock the conscience, or unfairly one-sided." Mohammed, 109 F. Supp. 3d at 1206-07. Even where the agreement is a contract of adhesion, presented to employees on a take-it-or leave it basis, the contract will be enforceable unless it is substantively unconscionable. Dittenhafer v. Citigroup,

Case 2:16-cv-05996-CAS-RAO   Document 16   Filed 02/13/17   Page 11 of 14   Page ID #:354

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    'O'   JS-6

| Case No. | 2:16-cv-05996-CAS (RAOx) | Date | February 13, 2017 |
|---|---|---|---|
| Title | YESENIA JURADO V. SCHUTZ 655 LLC; ET AL. | | |

Case No. 10-cv-01779-PJH, 2010 WL 3063127, at *5 (N.D. Cal. Aug. 2, 2010), aff'd, 467 F. App'x 594 (9th Cir. 2012).

Plaintiff acknowledges that "the substantively oppressive nature of the agreement [in this case] may be slight." Nonetheless, plaintiff argues that "[b]y its very nature, arbitration is more favorable to the employer than to the employee." Opp'n at 5. Plaintiff further argues that the arbitration clause "results in a one-sided arbitration mandate," because it deprives plaintiff of her seventh amendment right to a jury trial. Id. at 6. According to plaintiff, "[t]his is distinctly unfair to Ms. Jurado, particularly given the despicable racist behavior of Schutz that led to this action." Id.

The foregoing arguments are insufficient to demonstrate that the arbitration clause of the TCA is substantively unconscionable. As a practical matter, plaintiff may be correct that arbitration often favors employers. See Armendariz, 6 P.3d at 690 ("Various studies show that arbitration is advantageous to employers not only because it reduces the costs of litigation, but also because it reduces the size of the award that an employee is likely to get . . . It is perhaps for this reason that it is almost invariably the employer who seeks to compel arbitration"). However, "[i]t is well-settled that waivers of jury trial are fully enforceable under the FAA." Harrington v. Atl. Sounding Co., 602 F.3d 113, 126 (2d Cir. 2010).

When evaluating substantive unconscionability, courts focus upon whether there is, "a modicum of bilaterality." Armendariz, 24 Cal. 4th at 119. "[M]utuality is the 'paramount' consideration when assessing substantive unconscionability." Dittenhafer, 2010 WL 3063127, at *5. However, plaintiff does not direct the Court to any purportedly one-sided provision of the TCA's arbitration clause.[6] Accordingly, the Court concludes

---

[6] On the contrary, plaintiff does not appear to contest that the terms apply equally to both parties. The arbitration agreement provides for a neutral arbiter, see TCA ¶ 9(c) (arbitrator selected by mutual agreement), applies equally to each parties' claims, and requires defendants to pay for the costs of arbitration, see id. ¶ 9(d) ("where the law requires it . . . [the employer] will pay the arbitrator's and arbitration fees"). Defendants concede that they must bear the costs of arbitration pursuant to Armendariz, 24 Cal. 4th at 110 ("cost issues should be resolved . . . when a court is petitioned to compel arbitration" and "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'   JS-6

| Case No. | 2:16-cv-05996-CAS (RAOx) | Date | February 13, 2017 |
|---|---|---|---|
| Title | YESENIA JURADO V. SCHUTZ 655 LLC; ET AL. | | |

that the arbitration clause of the TCA is not substantively unconscionable and is therefore enforceable.

### C. Plaintiff's Claims Are Within the Scope of the Arbitration Clause

Having determined that the parties have assented to an enforceable arbitration agreement, the Court proceeds to determine whether or not plaintiff's claims fall within the scope of the arbitration agreement.

The TCA arbitration clause states:

**9. Dispute Resolution Protocol ('DRP')**

> . . . this DRP covers any dispute arising out of or relating to your employment with TriNet and/or, if you work for one of TriNet's customers, arising out of or relating to your employment with your company, as well as any dispute with a . . . employee, officer, or director of TriNet or of a TriNet customer (all of whom, in addition to TriNet customers, are intended to be beneficiaries of this DRP) ('covered dispute').

TCA ¶ 9. Although the foregoing language does not expressly name Schutz, the TCA explains that the phrase "your company" refers to a new employee's company using TriNet for certain services:

> If your relationship with TriNet is beginning because the company you work for ('your worksite employer,' or 'your company') is a TriNet customer, this means that your company has entered into an agreement with TriNet to share certain employer responsibilities as co-employers.

TCA ¶ 1.

---

employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court"), and have offered to do so, see Bush Decl. ¶ 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:16-cv-05996-CAS (RAOx) | Date | February 13, 2017 |
|---|---|---|---|
| Title | YESENIA JURADO V. SCHUTZ 655 LLC; ET AL. | | |

"[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986); see also Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765, (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ...."). Moreover, the presumption is "particularly applicable" where the arbitration clause is broad. Id. The Ninth Circuit has explained that arbitration clauses using only "arising under" language should be narrowly construed, while those invoking "relating to" language—like the language at issue here—are much broader in scope. See Cape Flattery Ltd. v. Titan Mar., LLC, 647 F.3d 914, 922 (9th Cir. 2011).

In light of the language of the TCA and the foregoing principles, the Court concludes that plaintiff's claims are within the scope of the arbitration provision of the TCA. Plaintiff's claims plainly relate to her employment at Schutz and the arbitration provision expressly extends to claims against Porto and Bush, as Schutz employees. Plaintiff does not argue that the foregoing language is subject to multiple reasonable interpretations. Nor does plaintiff argue that her claims are unrelated to her employment by one of TriNet's customers, Schutz. Therefore, plaintiff's claims are within the scope of a valid and enforceable arbitration clause. The arbitration clause requires arbitration of the claims here. Defendants' motion to compel arbitration is **GRANTED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:16-cv-05996-CAS (RAOx) | Date | February 13, 2017 |
| Title | YESENIA JURADO V. SCHUTZ 655 LLC; ET AL. | | |

## V.   CONCLUSION

Defendants' motion to compel arbitration is **GRANTED**. Further proceedings in this action are hereby **STAYED** pending arbitration by the parties. The Clerk is directed to remove this case from the civil active list.[7]

IT IS SO ORDERED.

|  | 00 | 04 |
|---|---|---|
| Initials of Preparer | | CMJ |

---

[7] Defendants seek dismissal or a stay, but do not argue for one over the other. Nor does plaintiff assert that one remedy is more appropriate. The TCA arbitration clause states "[t]o the extent, if at all, allowed or required by applicable law, the award may be confirmed, corrected, or vacated by a court of competent jurisdiction, and a court of competent jurisdiction will have the authority to enter judgment based on a final arbitration award." TCA ¶ 9(e). In light of the foregoing, the Court finds it appropriate to stay proceedings rather than dismiss the complaint.